IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00747-MSK-KLM

KELLY DALCOUR, and
JURITA AVRIL,

        Plaintiffs,

v.

CITY OF LAKEWOOD,
RON BURNS,
JENNIFER GILLESPIE,
MARISSA CORDOVA,
JOHN GRIFFITH,
JAMES R. JONES,
KRISTOPHER DEROEHN,
SCOTT WEICHERT, and
PATRICIA BUDDY,

        Defendants.

---

**ORDER GRANTING IN PART MOTION TO DISMISS**

---

THIS MATTER comes before the Court on two motions: (1) Defendant Patricia Buddy's Motion to Dismiss **(#109)** and accompanying brief **(#110)**, Plaintiffs' response **(#111)** and accompanying brief **(#112)**, and Ms. Buddy's reply **(#116)**; and (2) Ms. Buddy's Motion for Summary Judgment **(#144)** and accompanying brief **(#145)**, Plaintiffs response **(#154)** and accompanying brief **(#155)**, and Ms. Buddy's reply **(#158)**. Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

## I. Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## II.   Issue Presented

In this action, Plaintiffs bring three claims against Ms. Buddy, in both her official and individual capacities: (1) use of excessive force violating the Fourth Amendment; (2) unreasonable search and seizure violating the Fourth Amendment; and (3) interference with parental rights violating her right to substantive due process pursuant to the Fourteenth Amendment. These claims all result from a September 19, 2006 incident during which Lakewood Police entered Plaintiffs' home, arrested Plaintiffs, and removed Ms. Avril's minor children from the home.

In her Motion to Dismiss, Ms. Buddy contends that Plaintiffs have failed to sufficiently allege any municipal policy or custom as is required for the claims brought against her in her official capacity. Regarding the claims brought against her in her individual capacity, Ms. Buddy argues that she is entitled to qualified immunity and that the *Rooker-Feldman* doctrine bars Plaintiffs' claim under the Fourteenth Amendment.

## III.   Material Facts

This section 1983 action arises out of a dependency and neglect action regarding Ms. Arvil's two children. Ms. Buddy was a case worker assigned to the case. Construing the Plaintiffs' allegations most favorably to them, the Court finds that the Amended Complaint **(#101)**[1] alleges the following facts.

The Plaintiffs lived in Lakewood, Colorado with Ms. Avril's two children, Iyesha Avril,

---

[1] Contrary to Ms. Buddy's request, the Court declines to consider documents outside the Amended Complaint. A court may consider indisputably authentic documents that are referred to in the complaint if those documents are central to the plaintiff's claim. *See Alvarado v. KOB-TV*, 493 F.3d 1210, 1215 (10th Cir. 2007). Here, however, the Complaint makes no reference to transcripts of hearings conducted by the state court. They would be properly considered in conjunction with a motion for summary judgment or at trial.

14, and Christian Gully-Avril, 3. In July 2006, there was an altercation in which Iyesha stabbed Mr. Dalcour and injured Ms. Avril. Lakewood police responded to the disturbance. Iyesha was placed in a juvenile detention center. To secure her release, Ms. Avril agreed that Iyesha would not have any contact with Mr. Dalcour.

On September 19, 2006, Ms. Buddy requested that the Lakewood Police Department perform a welfare check at Plaintiffs' residence. Prior to the police's arrival at Plaintiffs' residence, Ms. Buddy told Officer Gillespie that a court order authorized officers to immediately remove the children from the home if Mr. Dalcour was found at the residence.[2] Upon arrival, Officer Gillespie knocked on the door, and when Ms. Avril answered, asked whether Mr. Dalcour was present in the home and forcibly attempted to enter. Ms. Avril prevented Officer Gillespie's entrance into the home. Additional officers were called to the scene. At some point officers determined that Mr. Dalcour was present at the home with Iyesha. Sergeant John Griffith, believing there to be an order authorizing the removal of the children, authorized officers to forcibly enter the residence and remove the children.

After the officers entered the residence, they handcuffed Mr. Dalcour to a sofa bed and pursued Ms. Avril to a back bedroom where she had locked herself and the two children. The officers forcibly entered the bedroom and used a taser on Ms. Avril until she lost consciousness. They took her outside and placed her in a police vehicle.

Ms. Buddy arrived on scene and took custody of the children. (Iyesha and Christian were not permitted to return to Ms. Avril's care for approximately seven months.)

---

[2] The Amended Complaint acknowledges that this is a disputed fact as Ms. Buddy and Officer Gillespie have made conflicting statements under oath regarding whether Ms. Buddy told Officer Gillespie that such a court order existed. However, in a Rule 12(b)(6) motion, the Court construes all allegations in the complaint in favor of Plaintiffs and, therefore, the Court assumes for purposes of this motion that Ms. Buddy did make this representation to Officer Gillespie.

At a hearing in July 2007, a state magistrate judge determined that at the time of the incident described above, there had been no court order that prohibited Iyesha from having contact with Mr. Dalcour or that authorized removal of Iyesha and Christian from a location where he was present. The magistrate judge also found that there was no valid search warrant nor any exigent circumstances justifying entry into the Plaintiffs' home.

## IV.   Analysis

A.   Official Capacity Claims

Ms. Buddy argues that all of Plaintiffs' claims against her in her official capacity must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs have not sufficiently alleged any city policy or custom that was the moving force behind the alleged constitutional violations. There is a strong presumption against dismissal for failure to state a claim under Rule 12(b)(6). *See Cottrell, Ltd. v. Biotrol Int'l, Inc.,* 191 F.3d 1248, 1251 (10th Cir. 1999). However, a claim must be dismissed if the complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if the complaint contains sufficient facts for a court to draw an inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *id.* at 556). Although a plaintiff is not required to include detailed factual allegations in a complaint, the complaint must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In reviewing a complaint under Rule 12(b)(6), a court should accept, as true, all well-pleaded facts and construe all reasonable allegations in the light most favorable to a plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Claims made against city employees in their official capacity are claims against the city itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). To hold a municipality liable for a constitutional violation, a plaintiff must show (1) that a city employee committed a constitutional violation and (2) that a municipal policy or custom was the "moving force" behind the constitutional violation. *See Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009). With respect to a municipal policy, a plaintiff must point to a policy statement, ordinance, regulation, or decision officially adopted or promulgated by the municipality or its officers. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007). Municipal customs are practices that, although not official adopted by the municipality, are so widespread and persistent as to take on the force of law. *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003); *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996).

Here, although the Amended Complaint alleges that Ms. Buddy misrepresented the existence of a court order that resulted in an unlawful entry into Plaintiffs' home and removal of Ms. Avril's children, it does not allege that the representation was the result of a municipal policy or custom. The only reference to a policy or custom is the conclusory allegation that the defendants were acting under "color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the state [sic] of Colorado, the City of Lakewood, and/or Jefferson County." Such a conclusory allegation without any specific factual allegation fails to state a claim. *See Twombly*, 550 U.S. at 555. Dismissal of all claims against Ms. Buddy in her official capacity is required.[3]

---

[3] Normally, the Court does not grant a Rule 12(b)(6) motion to dismiss without affording a plaintiff an opportunity to amend the complaint to cure any pleading deficiency. Here, however, Plaintiffs' response brief has not requested the opportunity to amend the Amended Complaint should their pleading of any claim be found wanting nor have they suggested the existence of any other facts that could be pled to remedy the identified deficiency. Moreover, the Court notes that the Amended

B.     Individual Capacity Claims

If a section 1983 claim is brought against a state or municipal employee in their individual capacity, the employee may be shielded from liability by the doctrine of qualified immunity. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). Qualified immunity protects government officials who perform discretionary government functions from liability for civil damages, provided that their conduct does not violate clearly established rights of which a reasonable government official would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to meet a two-part test. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009). A plaintiff must show that he or she had a constitutional right that was infringed, and that such right was clearly established at the time of the alleged infringement.[4]

In the context of a motion to dismiss, the determination of whether a complaint asserts a constitutional violation is made pursuant to the Rule 12(b)(6) standard. *See Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008). A plaintiff must show that the defendant either personally subjected the plaintiff to a constitutional deprivation or caused the plaintiff to be subjected to a constitutional deprivation. *See Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008); *Lippoldt v. Cole*, 468 F.3d 1204, 1219 (10th Cir. 2006).

---

Scheduling Order's **(#106)** deadline for amendment of the pleadings expired in July 2008. Therefore, the Court declines to offer an opportunity to amend.

[4] Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order. *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

Identification of the constitutional right in the abstract is insufficient; rather, a plaintiff must precisely articulate the clearly established right allegedly violated and specifically identify the defendant's conduct which violated the right. *See Green*, 574 F.3d at 1300.  In addition, there must be an "affirmative link" between the defendant and the constitutional deprivation. *Duffield*, 545 F.3d at 1238.  This connection can be shown by demonstrating that the defendant "set in motion" a series of events that the defendant knew or reasonably should have known would result in a deprivation of the plaintiff's rights. *See Bliss v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).

The determination of a whether a constitutional right has been clearly established is made in a "particularized sense" based on the specific facts of the case. *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004).  Typically, the inquiry is whether there was binding caselaw from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) recognizing a violation of federal law in similar factual circumstances as of the date of the events at issue. *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008).  The relevant inquiry, however, is not whether there was previous case with identical facts, but whether prior caselaw put the defendants on notice that the alleged conduct was unconstitutional. *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).  Whether the law was clearly established is essentially a legal question and is measured by an objective standard. *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

          1.     Excessive Force

With respect to Plaintiffs' excessive force claim, Ms. Buddy challenges Plaintiffs' ability to demonstrate that her actions resulted in a constitutional violation.  Ms. Buddy argues that there are no allegations in the Amended Complaint demonstrating an affirmative link between

7

her actions and any excessive force used against Plaintiffs.

With regard to a claim of use of excessive force in violation of the Fourth Amendment of the United States Constitution, a defendant need not have physically participated in administering the excessive force. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). As noted above, the requisite causal connection can be made by demonstrating that the defendant set in motion a series of events that the defendant knew or should have known would result in the excessive force. *See Bliss*, 446 F.3d at 1046.

The Amended Complaint alleges that Lakewood police officers unlawfully used excessive force when they entered Plaintiffs' home, subdued Ms. Avril, and arrested both Plaintiffs. However, there is no allegation that Ms. Buddy used excessive force or was present when it was used. Moreover, there is no allegation that Ms. Buddy knew that, as a result of her statement about an existing court order, the police would use excessive force or that she should have reasonably anticipated that they would use excessive force. Assuming that the officers used excessive force, as the Amended Complaint alleges, the allegations of the Amended Complaint suggest that it was the officers who determined how much force to use, and that their determination was independent of any act by Ms. Buddy. Because the Amended Complaint does not sufficiently allege that Ms. Buddy's actions caused or set in motion a series of events that resulted in the use of excessive force against Plaintiffs, she is entitled to qualified immunity on this claim.

    2.  Unreasonable Search and Seizure

Ms. Buddy argues that she is entitled to qualified immunity with respect to Plaintiffs' unreasonable search and seizure claim because the Amended Complaint does not sufficiently allege that Ms. Buddy personally deprived Plaintiffs, or caused Plaintiffs to be deprived of, a

constitutional right. Under the Fourth Amendment, warrantless searches and seizures inside the home are presumptively unreasonable. *See United States v. McCullough*, 457 F.3d 1150, 1163 (10th Cir. 2006) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)). Warrantless searches or seizures may be constitutionally conducted, however, when the police have probable cause and there are exigent circumstances that make the warrant requirement impractical.

As with other § 1983 claims, a plaintiff must allege a causal connection between the defendant and the execution of the search and seizure; this may be shown by the defendant's initiation of a series of events that could reasonably be expected to lead to the search and seizure.

Here, the Amended Complaint alleges that the police acted without a warrant in searching Plaintiffs' residence and arresting Plaintiffs. This is presumptively a Fourth Amendment violation unless there was probable cause and exigent circumstances. As to these, the Amended Complaint alleges that Ms. Buddy falsely told Officer Gillespie that there was an order prohibited Iyesha from having contact with Mr. Dalcour and that if both of them were present at the same location, it authorized removal of the children. According to the Amended Complaint, these statements to Officer Gillespie led to the welfare check and the attendant search of Plaintiffs' home. In essence, Ms. Buddy's statements gave rise to the officers' determination of probable cause and extenuating circumstances. There is nothing else stated in the Amended Complaint that would have justified a search absent a warrant. Thus, it was Ms. Buddy's statements that caused the allegedly unlawful search. According to the Amended Complaint, Ms. Buddy could and did expect that Officer Gillespie would rely on her statements in determining whether she could search the Plaintiffs' residence without a warrant. Therefore, the Amended Complaint sufficiently alleges a constitutional violation.

As to the remaining prong of the qualified immunity analysis, the Court finds that the

right to be free from an unlawful search was clearly established at the time of the alleged violation. It was clearly established that warrantless searches in the absence of probable cause and extenuating circumstances constitute violations of the Fourth Amendment. *See, e.g.*, *United States v. Chavez*, 812 F.2d 1295, 1298 (10th Cir. 1987).[5] Caselaw also recognized that a series of events could satisfy the causal connection in a § 1983 claim. *See Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990).

Accordingly, the Amended Complaint states sufficient facts to rebut the assertion of qualified immunity at this juncture.

### 3. Parental Rights

With respect to Plaintiffs' substantive due process claim, Ms. Buddy first argues that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine or, alternatively, that she is entitled to qualified immunity. Generally, the *Rooker-Feldman* doctrine protects state court decisions from impermissible review by lower federal courts by depriving these courts of jurisdiction over claims that were actually decided by, or are "inextricably intertwined" with, a final state court judgment. *See Merrill Lunch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004); *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006); *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004). In this case, Ms. Buddy argues that any claim seeking redress for removal of the children is inextricably intertwined with the state court's temporary custody orders. However, the allegations in the Amended Complaint concern Ms. Buddy's actions in initiating the removal of the children from

---

[5] The Court notes that Plaintiffs have not cited to this authority; however, the Court finds that the contours of the right are so obvious and clearly established that citation to a specific case with particularized facts is not necessary in the qualified immunity analysis. *See Brosseau*, 543 U.S. at 199.

the home despite the absence of a valid no-contact order or removal order, and not the validity of any state court orders. Therefore, the allegations in the Amended Complaint are not inextricably intertwined with any state court orders.

Ms. Buddy also contends that she is protected by qualified immunity. She argues both that the Amended Complaint fails to allege a constitutional violation and that the right was not clearly established at the time of the alleged violation. The Court begins with the "clearly established" prong of the qualified immunity analysis.

As discussed *supra*, to rebut the claim of qualified immunity at this juncture, a plaintiff must show that the constitutional right that was allegedly violated was clearly established at the time of the violation. It is not sufficient to simply name a general constitutional right. *See Green*, 574 F.3d at 1300. Instead, the plaintiff must point to legal authority which would lead a reasonable official to know that the conduct in question constituted a constitutional violation. *Id.*; *Brosseau*, 543 U.S. at 199. This is dependent upon the specific or particularized context of the case. *Brosseau*, 543 U.S. at 198.

In this case, Plaintiffs rely on two cases that they contend clearly establish the right to familial association and that a violation of that right violates the Fourteenth Amendment. They rely upon *Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993), and *Arnold v. Bd. of Educ. of Escambia County*, 880 F.2d 305, 312–13 (11th Cir. 1989).

Beginning with *Griffin*, the Court finds that the Tenth Circuit did not clearly recognize a right to familial association applicable to these circumstances. *Griffin* did not address parental rights or interference of such rights by removal of children by a social worker. Instead, *Griffin* addressed a wife's claim that a police officer interfered with her right to familial association with her husband during an investigation of her husband for child abuse. Therefore, *Griffin* does not

clearly establish a constitutional right to familial association in a "particularized sense" so as to put a reasonable officer on notice that removal of children from a home, even if performed on the basis of false allegations, would violate a parent's parental rights.[6] *See Brosseau*, 543 U.S. at 199–200; *Gomes*, 451 U.S. at 1134.

Similarly, *Arnold* also addressed a factual situation completely different from the one presented in this case. In *Arnold*, the Eleventh Circuit determined that it was a violation of the parent's parental rights for school officials to coerce two minors to avoid consulting their parents about an abortion decision. It reasoned that depriving parents of the opportunity to discuss a decision about an abortion with their children interfered with the parents' right to structure the education, values, and religious beliefs of one's children. Not only did *Arnold* not address the specific factual circumstances present here—whether a social worker's removal of children from a family home constitutes unconstitutional interference with parental rights—but the reasoning of *Arnold* is not applicable here. Ms. Avril alleges that Ms. Buddy's removal of the children interfered with her rights to the care, custody, and control of her children, not her right to direct the religious and moral education of her children. Such different factual circumstances and reasoning do not clearly establish a constitutional right in a "particularized sense" as required in the qualified immunity analysis. *See Brosseau*, 543 U.S. at 198–99. Furthermore, *Arnold* does not constitute binding precedent within the Tenth Circuit. *See York*, 523 F.3d at 1211–12.

Finding no clearly established right under the circumstances presented in this case, Ms.

---

[6] The Court notes that this is not an instance where the right is so obvious that a general description of a constitutional right suffices to put a defendant on notice that certain conduct violates the right. Indeed, as is evident in even *Griffin's* description of the right, the contours and limits of the right to familial association remain relatively fuzzy and are subject to a fact-dependent balancing test. *See* 983 F.2d at 1546–48.

Buddy is entitled to qualified immunity on this claim.

  C. Ms. Buddy's Motion for Summary Judgment

Also pending before the Court is Ms. Buddy's Motion for Summary Judgment as to the Official Capacity and Injunctive Relief Claims **(#144)**. Having dismissed the official capacity claims on Ms. Buddy's motion to dismiss, the motion for summary judgment is now moot. With respect to the arguments regarding the injunctive relief claims, injunctive relief is a remedy, not a claim and, therefore, not subject to summary judgment under Rule 56. Arguments regarding the imposition of injunctive relief are appropriate after a finding of liability.

  **IT IS THEREFORE ORDERED** that:

(1) Defendant Patricia Buddy's Motion to Dismiss **(#109)** is **GRANTED IN PART**. Plaintiffs' official capacity claims against Ms. Buddy are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs' individual capacity excessive force claim and familial association/parental rights claim against Ms. Buddy are **BARRED BY QUALIFIED IMMUNITY**.

(2) Ms. Buddy's Motion for Summary Judgment **(#144)** is **DENIED AS MOOT**.

Dated this 30th day of September, 2009

        **BY THE COURT:**

        *Marcia S. Krieger*
        _____

        Marcia S. Krieger
        United States District Judge