IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-00747-MSK-KLM

KELLY DALCOUR, and
JURITA AVRIL,

        Plaintiffs,

v.

CITY OF LAKEWOOD,
RON BURNS,
JENNIFER GILLESPIE,
MARISSA CORDOVA,
JOHN GRIFFITH,
JAMES R. JONES,
KRISTOPHER DEROEHN,
SCOTT WEICHERT, and
PATRICIA BUDDY,

        Defendants.

---

## ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT AND DENYING AS MOOT REMAINING ISSUES OF RULE 702 MOTION

---

**THIS MATTER** comes before the Court on Defendants City of Lakewood, Ron Burns, Jennifer Gillespie, Marissa Cordova, John Griffith, James R. Jones, Kristopher Deroehn, and Scott Weichert's (collectively "Defendants") Motion for Summary Judgment (**#147**), to which the Plaintiffs responded (**#156**), and the Defendants replied (**#163**). Additionally pending before the Court is the Parties' Joint Motion Under Rule 702 Regarding Testimony of Roger L. Willard (**#150**). Having considered the same, the Court **FINDS** and **CONCLUDES** as follows.

### I. Jurisdiction

The Court exercises jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  Issues Presented

The claims in this action arise from a September 19, 2006 incident during which Lakewood Police entered the Plaintiffs' home, arrested the Plaintiffs, and removed Ms. Avril's minor children from the home.  The Plaintiffs bring three claims against the police officers who were involved, Defendants Gillespie, Cordova, Griffith, Jones, Deroehn, and Weichert (collectively, "Police Officers" or "Officers"): (1) unreasonable search violating the Fourth Amendment; (2) unreasonable seizure and use of excessive force violating the Fourth Amendment; and (3) interference with parental rights violating Ms. Avril's right to substantive due process pursuant to the Fourteenth Amendment.  Additionally, the Plaintiffs assert a claim of municipal liability against Defendant City of Lakewood ("Lakewood") and a claim of supervisory liability against Defendant Burns, the former Lakewood Chief of Police.

In their Motion for Summary Judgment, the Defendants argue that summary judgment should be entered in their favor because (1) there is no evidence that a municipal policy or custom caused the alleged constitutional violations; (2) there is no evidence that former Chief of Police Burns sanctioned or approved of any of the alleged constitutional violations; and (3) all of the claims against the Police Officers in their individual capacities are barred by the doctrine of qualified immunity.

## III.  Material Facts

The Court has reviewed all of the parties' submissions. For purposes of this Motion only, the Court construes all disputed facts most favorably to the Plaintiffs.  Viewing the facts in such light, the undisputed facts are as follows:

At the pertinent points in time Mr. Dalcour and Ms. Avril lived with Ms. Avril's two

2

children, I.A. (age 14), and C.G. (age 3), in Lakewood, Colorado.  In July 2006,  an altercation occurred during which I.A. stabbed the Plaintiffs.  I.A. was detained in a juvenile detention center, and a dependency and neglect action was initiated.  In the course of the dependency and neglect proceeding, at which Ms. Avril was present, the state court ordered that I.A. and Mr. Dalcour have no contact with each other.  The same condition was imposed as a condition of I.A.'s release from the juvenile detention center.

Ms. Buddy was the case worker assigned in the dependency and neglect proceeding. On September 19, 2006, she requested that the Lakewood Police perform a welfare check at the Avril residence based on information that Mr. Dalcour was living at the residence in violation of the no contact orders.  Ms. Buddy advised Agent Gillespie that a court order prohibited Mr. Dalcour from being in the residence, and that if he was present, that she could/would obtain an order to remove the children.

Upon arrival at Ms. Avril's residence, Agent Gillespie stood outside on the porch for a few minutes during which she heard  male and female voices from inside the residence.  She proceeded to knock on the door and Ms. Avril answered.  Agent Gillespie inquired as to whether Mr. Dalcour was present.  Ms. Avril responded by asking whether Agent Gillespie had a warrant, to which Agent Gillespie replied that she had no "physical paperwork".  Agent Gillespie then attempted to enter the residence by placing her foot in the door, preventing it from closing. Ms. Avril blocked Agent Gillespie's entry, attempted to force the door closed, and repeatedly yelled at Agent Gillespie to "get out of her home".  Agent Gillespie, however, continued to demand entry and threatened to kick or push the door in to gain entry.  While talking to Ms. Avril, Agent Gillespie saw I.A. in the home.

During the interchange between Agent Gillespie and Ms. Avril, additional officers arrived. Agent Gillespie ceded her position at the door to another officer and briefed Sergeant John Griffith, the officer in charge, while standing on the porch. She informed Sergeant Griffith about the existence of the no contact order resulting from the previous stabbing incident,[1] the presence of the minor children in the residence, and her suspicion that Mr. Dalcour was in the residence. While they were talking, Mr. Dalcour came to the door and the officers visually confirmed his presence.[2] Sergeant Griffith then authorized a warrantless entry into the residence.

The Officers entered the residence through the front door. Upon entry, the Officers handcuffed Mr. Dalcour to a bed in the living room. Mr. Dalcour remained restrained in the living room for approximately twenty minutes, ten of which he was alone in the home. There is no dispute that throughout the encounter he remained cooperative and compliant.

Ms. Avril retreated to a back bedroom where she locked herself and the two children. Officers broke down the door to the bedroom and carried Ms. Avril to another bedroom. There, five officers restrained Ms. Avril. She was forced to the ground and repeatedly kneed and elbowed. Sergeant Griffith used a taser (set on the drive stun mode for a five-second cycle) once or twice to subdue Ms. Avril. Once subdued, the Officers took Ms. Avril outside and placed her

---

[1] Sergeant Griffith was not aware, however, that Mr. Dalcour had been the victim, not the perpetrator, in the earlier stabbing incident.

[2] Mr. Dalcour may have also had contact with Agent Gillespie prior to this incident. According to the transcript of a 911 phone call that Mr. Dalcour made during the welfare check, Mr. Dalcour told someone to leave if they did not have a warrant. It is unclear from the transcript, however, whether Agent Gillespie, or any other officer, heard him, whether he made the statement from behind the door or in sight of Agent Gillespie, or whether Agent Gillespie knew that it was him who made the statement.

in a police vehicle.  At some point, Ms. Buddy arrived and took custody of the children.[3]

Mr. Dalcour was cited for three violations but was not arrested.  All charges against him were eventually dismissed.  Ms. Avril, however, was taken into custody.  The charges against her proceeded to a jury trial in August 2008.  She was acquitted of third-degree assault and child abuse, but convicted of obstructing a police officer and resisting arrest.

## IV.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

---

[3]   The Court notes, but finds that it is not material to this motion, that I.A. and C.G. were not permitted to return to Ms. Avril's care for approximately seven months, after a series of hearings in state court.

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## V.   Analysis

A.     Municipal Liability

Claims made against city employees in their official capacity[4] are actually claims against the city itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). To hold a municipality liable for a constitutional violation, a plaintiff must show (1) that a city employee committed a constitutional violation and (2) that a municipal policy or custom was the "moving

---

[4] Here, the Plaintiffs assert what they call "official capacity" and "individual capacity" claims against the Police Officers. Because official capacity claims are claims against Lakewood; only individual capacity claims are asserted against the Police Officers.

force" behind the constitutional violation. *See Cordova v. Aragon*, 569 F.3d 1183, 1193 (10th Cir. 2009). With respect to a municipal policy, a plaintiff must point to a policy statement, ordinance, regulation, or decision officially adopted or promulgated by the municipality or its officers. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1259 (10th Cir. 2007). Municipal customs are practices that, although not official adopted by the municipality, are so widespread and persistent as to take on the force of law. *See Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1177 (10th Cir. 2003); *Lankford v. City of Hobart*, 73 F.3d 283, 286 (10th Cir. 1996).

In this case, Lakewood argues that there is no evidence suggesting that the Police Officers' actions on September 19th were the result of a municipal policy or custom. The Plaintiffs respond that the underlying policy or custom is evidenced by (1) the fact that the ultimate decision as to whether the enter the Plaintiffs' home was made by Sergeant Griffith;[5] (2) at no time after the incident did Lakewood tell the Police Officers that their conduct was improper or reprimand them for such conduct; and (3) Agent Gillespie has indicated a misunderstanding of the law regarding warrantless entries into homes.[6]

None of these arguments create a genuine issue of fact as to whether a municipal policy or custom was the moving force behind the Police Officers' actions. The Plaintiffs have presented no evidence of any policy or an unofficial practice or custom regarding warrantless searches. Instead, the Plaintiffs argue that because no officer was disciplined for conduct relative to this incident, that Lakewood must have had a policy that condones such conduct. The

_____

[5] Although the Plaintiffs contend that Sergeant Griffith had final policy making authority, they provide no evidence supporting this allegation. Even if he did, which the Defendants dispute, it is insufficient to establish a policy or custom.

[6] Even if Agent Gillespie was confused or misunderstood her authority, this does not establish a custom or policy by Lakewood with regard to warrantless searches.

Court cannot draw such inference.  Neither a decision in a particular case by particular officer, nor failure to reprimand an officer for action that is allegedly unconstitutional, nor an officer's misconception of the law establishes a municipal-wide policy or custom.  In the absence of a sufficient factual showing, entry of summary judgment in favor of Lakewood on the claims asserted against it is appropriate.

B.     Supervisor Liability

In the context of § 1983, the term "supervisor liability" is a misnomer, that grows out of the civil law concept of *respondeat superior*.  With regard to allegations of constitutional deprivations, there is no derivative liability based upon such doctrine.  Entity liability is addressed above.  Individual liability of a supervisor arises only if the supervisor personally participated in the conduct, exercised of control or direction over it, failed to supervise, failed to train or tacitly authorized the conduct that resulted in the constitutional deprivation.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Currier v. Doran*, 242 F.3d 905, 925 (10th Cir. 2001).

Here, former Chief of Police Burns argues that the Plaintiffs have presented no evidence of any affirmative link between his actions and the alleged constitutional violations.  The Plaintiffs respond that there was a failure to adequately train the Police Officers in Fourth Amendment search and seizure laws.  To establish liability based on a failure to train, a plaintiff must demonstrate that there was a complete absence of training or that the training provided was so recklessly inadequate that it would almost inevitably lead to future deprivations.  *See Woodward v. Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992); *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988).

The record contains no evidence that demonstrates either a complete failure to train or training that was so recklessly inadequate that it constitutes deliberate indifference.  Plaintiffs offer only conclusions and argument.  There is no identified shortcoming in the training, nor a link between a shortcoming in training and the Police Officers' actions.  Even if Agent Gillespie engaged in unconstitutional conduct, there is nothing that demonstrates that such conduct was the result of inadequate training.  In the absence of sufficient evidence to create a factual issue, entry of summary judgment in favor of former Chief of Police Burns on claims against him is warranted.

C.      Claims Against the Police Officers

The claims asserted against the Police Officers are (1) unreasonable search violating the Fourth Amendment; (2) unreasonable seizure and use of excessive force violating the Fourth Amendment; and (3) interference with parental rights violating Ms. Avril's right to substantive due process pursuant to the Fourteenth Amendment.  In response, the Officers assert the defense of qualified immunity.

The doctrine of qualified immunity protects government officials who perform discretionary government functions from liability for civil damages and the obligation to defend the action.  *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This immunity is only applicable, however, if the official's conduct did not violate clearly established constitutional or statutory rights that would have been known by a reasonable government official.  *See Harlow*, 457 U.S. at 818; *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005).

When a defendant raises a qualified immunity defense, the burden shifts to a plaintiff to

satisfy a two-part test.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009).  A plaintiff must show that he or she had a constitutional right that was infringed (the "violation prong"), and that such right was clearly established at the time of the alleged infringement (the "clearly established prong").  Although a plaintiff must ultimately establish both elements to avoid application of the doctrine, the Court has discretion to consider the elements in any order.  *See Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009); *Green*, 574 F.3d at 1299.

With respect to the violation prong, a plaintiff must show that the defendant's actions deprived him or her of a constitutional or statutory right.  *See Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  Identification of a constitutional right in the abstract is insufficient; instead, a plaintiff must precisely articulate the clearly established right that was allegedly violated and specifically identify the defendant's conduct that violated the right.  *See Green*, 574 F.3d at 1300.

For the clearly established prong, the question is whether the identified right was clearly established based on the specific facts of the case.  *Brosseau v. Haugen*, 543 U.S. 194, 199–200 (2004).  Typically, the inquiry is whether, on the operative date, there was binding authority from the Supreme Court or Tenth Circuit (or the clear weight of authority from other circuits) recognizing that particular conduct would constitute a violation of federal law.  *York v. City of Las Cruces*, 523 F.3d 1205, 1211–12 (10th Cir. 2008).  The inquiry is not whether there was previous case with identical facts, but instead, whether prior caselaw put the defendants on notice that the alleged conduct would be unconstitutional.  *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).  This is essentially a legal question and is measured by an objective

standard.  *See Crawford-El v. Britton,* 523 U.S. 574, 589-90 (1998).

If a plaintiff establishes both prongs under the qualified immunity analysis, for summary judgment the burden shifts back to the defendant to demonstrate that there are no material facts in dispute.  *See Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991).

      1.      Warrantless Search

The Plaintiffs first contend that the Police Officers' entry into the residence without a warrant was a violation of their Fourth Amendment right to be free from unreasonable searches. The Court begins with the violation prong.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. Because a person's home is entitled to Fourth Amendment protection, ordinarily a warrant to search is required, and warrantless searches are presumptively unreasonable.  *See United States v. McCullough*, 457 F.3d 1150, 1163 (10th Cir. 2006) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)); *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006).

A warrant is not required where there are exigent circumstances.  *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001).  Exigent circumstances exist when (1) law enforcement officers have an objectively reasonable basis to believe that there is an immediate need to enter to protect the safety of themselves or others, and (2) the manner and scope of the search is reasonable.[7]  *See Najar*, 451 F.3d at 718.

The Plaintiffs argue that the entry of the Police Officers into the residence was

---

[7]  This is a change from prior Tenth Circuit law requiring a showing of probable cause to enter the home under this type of exigent circumstances.  *See Najar*, 451 F.3d at 718 (citing *Brigham City v. Stuart*, 547 U.S. 398, 406–09 (2006)).

unconstitutional because there was no warrant.  The Police Officers respond that their warrantless entry was justified by exigent circumstances.

Construing the evidence most favorably to the Plaintiffs, the Court concludes that exigent circumstances existed, thereby excusing the need for a warrant.  The Officers were at the Plaintiffs' residence to perform a welfare check, they were aware of the previous violent incident between  I.A. and the Plaintiffs, they reasonably believed that there was a court order that prohibited contact between Mr. Dalcour and I.A., and they knew that both Mr. Dalcour and I.A. were in the residence.[8]  The Court finds that these facts gave rise to an objectively reasonable belief that there was an immediate need to enter the home to protect the safety of the Plaintiffs and/or the minor children.  These facts constitute exigent circumstances that justified a warrantless entry into the residence.

The Plaintiffs have argued that a warrant was required, but have not otherwise rebutted the Police Officers' showing of exigent circumstances.  As a result, the violation prong of the qualified immunity analysis is not satisfied.  *See Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007); *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).  Accordingly, their claims against the Police Officers that are based upon entry into the residence are barred by qualified immunity.

2.      Unreasonable Seizure of the Plaintiffs and Use Excessive Force

Although the warrantless entry into the home was constitutionally permissible, the Court independently examines the claims of that the Police Officers violated the Plaintiff's rights while

_____

[8] Arguably, even if there had been no court order specifically prohibiting contact, the Officers might have had sufficient facts to justify entry pursuant Colo. Rev. Stat. § 19-3-401, which allows officers to take children into temporary custody without a court order when the child is seriously endangered or seriously endangers others.

12

in the residence.  The Plaintiffs assert two claims—that they were unconstitutionally seized and that they were subjected to use of excessive force by the Police Officers.  Again, the Officers assert the doctrine of qualified immunity.

Seizures by law enforcement officers, like searches, are governed by the Fourth Amendment's reasonableness requirement.  *See United States v. Gonzales*, 535 F.3d 1174, 1181 (10th Cir. 2008).  This reasonableness standard is also applicable to claims challenging the use of force during a seizure.  *See Estate of Larsen v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008); *Cortez*, 478 F.3d at 1125.  In cases where a plaintiff alleges both unlawful seizure and the use excessive force based on a single encounter, it is necessary to consider both the justification that the officers had for the seizure and the amount of force they used in effectuating it.  *See Cortez*, 478 F.3d at 1126–27.  If officers lack appropriate justification for the seizure, then a plaintiff is entitled to an award of damages for the unlawful seizure, which may also include compensation for the force used in effectuating it.  However,  officers may lawfully seize someone, but use excessive force in doing so.  In such case, a plaintiff may recover only for the use of excessive force.  The evidence for the separate claims may overlap, but the inquiries are separate and independent.

a.      Unreasonable Seizure

The Court begins with the clearly established prong of the qualified immunity analysis, finding that the standards for lawful detentions were clearly delineated in the Tenth Circuit at the time of Mr. Dalcour's and Ms. Avril's detentions.  *See United States v. Davis*, 94 F.3d 1465, 1467–68 (10th Cir. 1996).

To be reasonable, an arrest must be supported by probable cause.  *See id.*  Probable cause

to arrest requires that under the totality of the circumstances and based on reasonably trustworthy information, it is reasonable to believe that an offense has been or is being committed. *See United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001). Probable cause requires more than mere suspicion, but need not be based on knowledge of facts sufficient to establish guilt.

In contrast, an investigative detention must be supported by reasonable suspicion of criminal activity. Reasonable suspicion is a lesser standard than probable cause and may exist on information less reliable than that needed for probable cause. *See United States v. Tucker*, 305 F.3d 1193, 1201 (10th Cir. 2002). All that is required is a particularized and objective basis for suspecting criminal activity. The scope of an investigative detention, however, must be reasonably related to the suspicion that justified the detention in the first place. *See United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002). When the scope exceeds the justification, it becomes an arrest and, therefore, must be supported by probable cause. The reasonable scope of the detention must be determined by the totality of the circumstances facing the officers at the time, including officer safety. Indeed, although investigative detentions are generally non-intrusive, they may reasonably include some intrusive measures if safety concerns necessitate it.

(i)      Mr. Dalcour

Moving to the violation prong of the qualified immunity analysis, Mr. Dalcour has come forward with evidence demonstrating that he was handcuffed to a bed for approximately twenty minutes. If Mr. Dalcour's seizure was, at minimum, an investigative detention. As such, to be lawful, it must have been supported by reasonable suspicion of criminal activity. If it rose to the level of an arrest, it required probable cause to be lawful.

14

The Police Officers concede that their treatment of Mr. Dalcour was not warranted as an investigative detention, nor as an arrest.  Instead, they argue that it was justified on officer safety grounds.  *See Gallegos v. City of Colo. Springs*, 114 F.3d 1024, 1030–31 (10th Cir. 1997); *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993).  For a detention to be justified by safety interests, the government's interest in protecting safety must outweigh the individual's interest in being free from seizure.  *See King*, 990 F.2d at 1560.  In this case, construing the evidence in the light most favorable to Mr. Dalcour, it is disputed whether a reasonable police officer would have believed it necessary to handcuff Mr. Dalcour to a bedstead, especially after Ms. Avril and the children were secured.  The Court therefore finds that Mr. Dalcour has presented sufficient evidence to establish both prongs required in the qualified immunity analysis.

As Mr. Dalcour has met his burden under qualified immunity, the burden now shifts to the Police Officers to demonstrate the absence of factual disputes such that judgment should enter as a matter of law.  As noted *supra*, however, it remains disputed whether safety interests necessitated detaining Mr. Dalcour at all and whether the degree and duration of the detention was reasonable given the particular circumstances.  These disputes are properly resolved at trial.

(ii)     Ms. Avril

The Police Officers begin by arguing that Ms. Avril's state court convictions of obstructing a police officer, in violation of Colo. Rev. Stat. § 18-8-104[9] and resisting arrest, in

---

[9]  Colo. Rev. Stat. § 18-8-104 provides:
(1)(a) A person commits obstructing a peace officer, firefighter, emergency medical services provider, rescue specialist, or volunteer when, by using or threatening to use violence, force, physical interference, or an obstacle, such person knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority . . .

violation of § 18-8-103,[10] bar her from asserting claims for unreasonable seizure and excessive force in this action.  The Court understands the Officers' argument to raise fundamental issues under the doctrines of *res judicata* and collateral estoppel.

Under Colorado law, *res judicata*, alternatively known as claim preclusion, bars relitigation of a claim when four elements are satisfied: (1) finality of the prior judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions.  *See Gallegos v. Colo. Ground Water Comm'n*, 147 P.3d 20, 32 (Colo. 2006).  As between this case and the state court criminal matter, there no identity of subject matter, identity of the claims for relief, or identity of parties.

Ms. Avril was convicted of violating state statutes that pertained to her response to exercise of police authority; the actions did not concern or determine whether the authority that the Police Officers used was constitutionally authorized.  In addition, the Police Officers were not parties to the criminal action.  Thus, Ms. Avril's claims are not barred by the doctrine of *res*

---

. . .

(2) It is no defense to a prosecution under this section that the peace officer was acting in an illegal manner, if he was acting under color of his official authority as defined in section 18-8-103 (2).

[10] Colo. Rev. Stat. § 18-8-103 provides:

(1) A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:

    (a) Using or threatening to use physical force or violence against the peace officer or another; or

    (b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.

(2) It is no defense to a prosecution under this section that the peace officer was attempting to make an arrest which in fact was unlawful, if he was acting under color of his official authority, and in attempting to make the arrest he was not resorting to unreasonable or excessive force giving rise to the right of self-defense.

*judicata.*[11]

Collateral estoppel, or issue preclusion, bars relitigation of specific *issues* actually litigated and decided in a prior proceeding if (1) the issue is identical to an issue already litigated and decided; (2) the party against whom estoppel is sought was a party to or in privity with a party in the prior proceeding; (3) there was a final judgment on the merits; and (4) the party against whom estoppel is sought had a full and fair opportunity to litigate the issue. *See Colo. Ground Water*, 147 P.3d at 32. To the extent that it is relevant to the claims in this action, Ms. Avril is precluded from disputing that she resisted arrest and obstructed the police officers. However, this does not preclude her from challenging the Officers' authority to seize her or whether the force used to do so was excessive. Neither issue was determined in the criminal case.[12]

With respect to the violation prong of the qualified immunity analysis, Ms. Avril has presented evidence that she was chased into the back bedroom, restrained by a number of officers, and arrested. As with Mr. Dalcour, the Officers argue that they were authorized to detain her to protect their safety and the safety of the minor children. The reasonableness of the actions of the Officers is situation specific and the facts are in dispute. Therefore, Ms. Avril has met her burden under the qualified immunity analysis and demonstrated the presence of factual issues that are properly resolved at trial.

---

[11] For substantially the same reasons, Ms. Avril's claims are not barred by the rule announced in *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

[12] Had Ms. Avril asserted self-defense to the charge of resisting arrest in her state court trial, the jury might have been called upon to determine whether the Officers used excessive force in arresting her. *See* Colo. Rev. Stat. §§ 18-8-103(2). Collateral estoppel might then bar her relitigation of that factual issue.

b.      Excessive Force

For excessive force claims, the ultimate issue is whether the officer's use of force was objectively reasonable in light of the surrounding facts and circumstances as seen from the perspective of a reasonable officer at the scene. *Graham v. Connor*, 490 U.S. 386, 397 (1989). To make this determination, a court must evaluate the totality of the circumstances and balance several factors including the severity of the alleged crime, the degree of threat that the suspect posed to the officer and the public, and the cooperation, or lack thereof, by the suspect. *See Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002). This reasonableness standard for excessive force claims is clearly established for purposes of the qualified immunity analysis. *See Olsen*, 312 F.3d at 1314; *Wilson v. Meeks*, 52 F.3d 1547, 1552–53 (10th Cir. 1995).

(i)      Mr. Dalcour

With respect to the violation prong, Mr. Dalcour argues the Police Officers used excessive force on him when they handcuffed him to the bed. Again, the Police Officers argue that the force was justified based on safety concerns. As discussed *supra*, however, there remain genuine disputes as to whether the level and duration of force used, *i.e.*, handcuffing Mr. Dalcour to a bed for approximately twenty minutes, ten of which he was alone in the residence, was necessary under the circumstances. Construing the evidence most favorable to Mr. Dalcour, he has established the violation prong of the qualified immunity analysis and demonstrated the existence of factual disputes properly resolved at trial.

(ii)      Ms. Avril

Ms. Avril has also presented sufficient, competent evidence, that construed most

18

favorably to her, raise genuine issues of fact regarding the amount of force that was used and was necessary to effect her arrest. The Police Officers forcibly entered her home over her objection. She hid with her children (apart from Mr. Dalcour) in a back bedroom. Officers broke into the bedroom and dragged her from it into another bedroom. There, she was restrained by five officers, who elbowed, kneed, and tased her. Although the Police Officers will undoubtedly attempt to prove that Ms. Avril was uncooperative and actively resisting arrest, whether the force used to seize her was reasonable is disputed. Such a dispute is sufficient to establish the violation prong and, thus, defeat the Police Officers' claim of qualified immunity. Furthermore, summary judgment is not appropriate as such disputes are properly resolved at trial.

       3.     Parental Rights

The Police Officers also argue that they are entitled to qualified immunity with regard to the Plaintiffs' parental rights claim. The Court begins with the clearly established prong of the qualified immunity analysis.

As discussed *supra*, to meet the clearly established prong, the Plaintiffs must do more than simply name a general constitutional right, they must point to legal authority which would lead a reasonable official to know that the conduct in question constituted a constitutional violation. *See Green*, 574 F.3d at 1300; *Brosseau*, 543 U.S. at 199. This is dependent upon the specific or particularized context of the case. *See Brosseau*, 543 U.S. at 198.

In the Court's previous Order addressing Ms. Buddy's Motion to Dismiss (**#165**), the Court considered whether, at the time of the alleged violation, there was case law clearly establishing the right to familial association in a "particularized sense" so as to put a reasonable

19

officer on notice that removal of children from a home would violate a parent's parental rights. *See id.* Having considered the Plaintiffs' argument in that context, the Court concluded that the right was not clearly established.[13]

In this context, the Plaintiffs rely on two additional cases which they contend establish the right to familial association in this context. Giving them careful review, the Court concludes that these cases do not establish the right in a "particularized sense." *See id.* First, *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1439 (10th Cir. 1990), dealt with a marital relationship; it did not address a parent-child relationship at all.

The second opinion is in *Trujillo v. Bd. of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985). Here the Circuit Court addressed whether the wrongful death of an individual deprived his mother and sister of their rights to familial association. *Trujillo* recognized an abstract constitutional right to enjoy family relationships. It did not, however, establish a constitutional right in the "particularized sense" of this case—whether removal of children from the home based on welfare concerns would violate the right to family association. Therefore, it would not put a reasonable officer on notice that removal of children from a home based on welfare concerns would constitute a constitutional deprivation.

Finding no clearly established right under the circumstances presented in this case, the

---

[13] The Court incorporates its prior reasoning by this reference, but notes that the case law previously offered by the Plaintiffs was unpersuasive. *Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993), focused on a wife's relationship with her husband and therefore it did not clearly establish a constitutional right to a parent-child relationship. *Arnold v. Bd. of Educ. of Escambia County*, 880 F.2d 305, 312–13 (11th Cir. 1989), addressed a parent's right to control the religious and moral education of children, not the right to be free from interference with the physical control and custody of children. As such, it did not put a reasonable officer on notice that removal of children from a home would violate a constitutional right to familial association. In addition, *Arnold* does not constitute binding precedent within the Tenth Circuit. *See York*, 523 F.3d at 1211–12.

Police Officers are entitled to qualified immunity on this claim.

D.      Expert Opinion by Roger L. Willard

The parties jointly moved for a determination of the admissibility of the expert opinions

of the Plaintiffs' expert Roger L. Willard **(#150)** under Fed. R. Evid. 702.  An evidentiary hearing

was held on October 16, 2009.  The Court addressed some opinions, but reserved ruling on

others[14] so that the parties could address whether *Specht v. Jensen*, 853 F.2d 805 (10th Cir.

1988), barred some of Mr. Willard's opinions.  Both parties filed additional briefs **(#181, #182)**.

The opinions that were the subject of the briefing and reserved ruling pertain only to

whether the Police Officers' warrantless entry into the Plaintiffs' home was reasonable under the

circumstances.  In light of the determination of those claims in this Order, the opinions are no

longer relevant.  Accordingly, any determination of their admissibility under Rule 702 or

preclusion as legal opinions is now moot.

**IT IS THEREFORE ORDERED** that

(1)     The Lakewood Defendants' Motion for Summary Judgment **(#147)** is

         **GRANTED IN PART AND DENIED IN PART**.

(2)     Summary judgment hereby enters in favor of the City of Lakewood and Ron

         Burns on all claims.

(3)     The Plaintiffs' unconstitutional search claim and the Plaintiffs' parental rights

         claims against the Police Officers in their individual capacities are **BARRED BY**

         **QUALIFIED IMMUNITY**.

(4)     As to the Police Officers, the Plaintiffs' remaining claims are for  unconstitutional

---

[14]  Opinions 1, 2, 3, 4, 5, 6, 7, 9, and 10.

seizure and the use of excessive force.

(5)     The Parties' Joint Motion Under Rule 702 Regarding Testimony of Roger L.

Willard **(#150)** is **DENIED AS MOOT** with respect to Opinions 1, 2, 3, 4, 5, 6,

7, 9, and 10.

Dated this 4th day of December, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge