**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 08-cv-00747-MSK-KLM

**KELLY DALCOUR, and
JURITA AVRIL,**

    Plaintiffs,

v.

**JENNIFER GILLESPIE,
MARISSA CORDOVA,
JOHN GRIFFITH,
JAMES R. JONES,
KRISTOPHER DEROEHN,
SCOTT WEICHERT, and
PATRICIA BUDDY,**

    Defendants.

_____

**OPINION AND ORDER ADDRESSING SCOPE OF
INJURIES SUBJECT TO REDRESS AT TRIAL**
_____

    **THIS MATTER** comes before the Court in an unusual procedural posture. The Plaintiffs commenced this action asserting various claims against each Defendant. As a result of dispositive motions, the Court dismissed some claims against some Defendants, and granted summary judgment to the Defendants on other claims. The remaining claims proceeded to a jury trial in February 2011. At the conclusion of that trial, the jury returned a verdict in favor of the Defendants on all remaining claims. The Plaintiffs took an appeal from various rulings, both as to the dispositive motions and to the trial proceedings. On September 4, 2012, the 10th Circuit affirmed the majority of the rulings made by the Court, but reversed and remanded the action on

1

one relatively narrow issue. *Dalcour v. City of Lakewood*, 492 Fed.Appx. 924 (10th Cir. Aug. 6, 2012). This Court convened a hearing to address the scope of the matter to be tried upon remand, at which time it became clear that there was a dispute between the parties on that issue. The Court directed the parties to brief their positions regarding the scope of matters remaining to be addressed, and the parties have done so (**# 285, 286, 287**). Being so advised, the Court now addresses the scope and contours of any future trial that may be held on the remaining issue.

## FACTS

The Court assumes the reader's familiarity with the relevant facts, and thus, sets them forth in a fairly summary fashion. The Plaintiffs are the parents of two minor children, "MCI" and "MCC." Following an incident in July 2006 incident, the children were placed under a court-issued Order of Protection, which allowed them to reside with Ms. Avril, but prohibited Mr. Dalcour from having any contact with them. Bond conditions for Mr. Dalcour also prohibited him from being present in Ms. Avril's residence.

In September 2006, Defendant Buddy, a child services caseworker, came to believe that Mr. Dalcour might be present at Ms. Avril's home, in violation of the court orders. Ms. Buddy contacted the Lakewood Police to request a welfare check on the children. Defendant Gillespie responded to that request and, after having some discussion with Ms. Buddy, went to Ms. Avril's home. Ms. Gillespie knocked on Ms. Avril's door and Ms. Avril answered, but she refused to allow Ms. Gillespie and her partner to enter the home. Ms. Avril attempted to close the door, but Ms. Gillespie placed her foot in the doorway, preventing the door from closing. Heated discussions ensued, and Ms. Gillespie called for backup.

By the time backup officers had arrived, Ms. Gillespie had ascertained that Mr. Dalcour was present in the house. She informed the backup officers of the existence of the court orders and Mr. Dalcour's apparent violation of them. One of the backup officers, Defendant Griffith, concluded that the officers should enter the residence, and proceeded to force open the door. The officers then entered the house, arresting both Mr. Dalcour and, after a brief struggle and the application of a taser, Ms. Avril.

The Plaintiffs commenced this action, alleging three claims under 42 U.S.C. § 1983 against each Defendant: (i) use of excessive force; (ii) unreasonable search and seizure; and (iii) a substantive due process claim arising out of interference with parental rights. As relevant here, the Court granted summary judgment to Ms. Gillespie, Mr. Griffith, and the remaining police officers on the Plaintiff's unreasonable search claim, finding that the officers had a reasonable belief that exigent circumstances entitled them to enter Ms. Avril's home (and thus, that the officers were entitled to qualified immunity on that claim), and denied the officers' request for summary judgment on claims of unlawful arrest and the use of excessive force. At the conclusion of the February 2011 jury trial, the jury found that none of the officers engaged in an unlawful seizure of either Plaintiff, and that none of the officers used excessive force against either Plaintiff.

The Plaintiffs appealed, raising various arguments, only one of which is relevant here: that the Court erred in granting summary judgment to the officers on the unreasonable search claim because exigent circumstances were not present to permit the officers to enter the house. The 10th Circuit analyzed the issue at two different stages. First, it considered Ms. Gillespie's initial act of placing her foot in the doorway, preventing Ms. Avril from closing the door.

Explaining that "any physical intrusion into a home constitutes entry," the 10th Circuit found that Ms. Gillespie's placing her foot in the doorway constituted an entry into Ms. Avril's home for Fourth Amendment purposes. 492 Fed.Appx. at 932-33. The court then considered whether Ms. Gillespie had grounds to effect such entry into the home without a warrant – that is, whether Ms. Buddy's request constituted exigent circumstances permitting a warrantless entry – and concluded that she did not. *Id.* at 933. Thus, the court found that the Plaintiffs had articulated a triable claim against Ms. Gillespie for an unreasonable search arising out of the act of placing her foot in the doorway.

The court then turned to the question of whether Ms. Gillespie "should be held liable for the later forced entry of the home under an imputed liability theory, arguing that [Ms.] Gillespie misled [Mr. Griffith] into ordering the forced entry." *Id.* at 934. The court acknowledged that Ms. Gillespie could be held liable for inducing Mr. Griffith's unlawful entry[1] into the home if she "miscommunicate[d the relevant facts] with Sergeant Griffith . . . intentionally or recklessly." But it concluded that "there is no indication in the record that Agent Gillespie was anything other than confused about the Officers' authority to enter the home." *Id.* at 934. Thus, the 10th Circuit "affirmed the district court's grant of qualified immunity to Agent Gillespie with respect to the forced entry of the home." *Id.* at 935. The court concluded by stating "we REVERSE with respect to the district court's summary judgment granting Agent Gillespie

---

[1] At this stage of the 10th Circuit's decision, the court appears to be assuming, for purposes of the ruling, that Mr. Griffith's entry into the home was unlawful. The court proceeded to conclude that Mr. Griffith was properly granted summary judgment on the unlawful search claim, in that the circumstances that appeared to him at the time of his arrival on the scene justified a warrantless entry into the home. *Id.* at 934-35.

4

qualified immunity for her initial warrantless entry and REMAND for further proceedings on that claim alone." *Id.* at 938.

Upon remand, this Court convened a hearing to address the need for further proceedings in light of the 10th Circuit's ruling and, if necessary, the scope of such proceedings. The Plaintiffs took the position that the damages recoverable, should the jury find that Ms. Gillespie's placing of her foot in the door constituted an unlawful search, included the damages that the Plaintiffs sustained as a result of all of the officers entering the home and damages relating to the amount for force used by the officers in effecting the Plaintiffs' arrests. The two major premises underlying the Plaintiffs' argument are: (i) Ms. Gillespie's foot in the doorway set in motion a chain of events (Ms. Gillespie's observation of Mr. Dalcour inside the house, the calling for backup officers, Mr. Griffith's decision to enter the home, etc.) that would not have occurred but for Ms. Gillespie putting her foot in the doorway; and (ii) that the jury's verdicts regarding the reasonableness of the arrests of the Plaintiffs should be afforded no weight because the jury was not permitted to consider that those arrests came about only because of Ms. Gillespie unconstitutionally placing her foot in the doorway.

## **ANALYSIS**

The question presented is: with regard to Plaintiffs' 42 U.S.C. § 1983 claim, what is the proper scope of injury arising from Ms. Gillespie's alleged violation of the Plaintiffs'[2] Fourth Amendment rights by placing her foot in the doorway as Ms. Avril attempted to close the door.

---

[2]  The Defendants argue that Mr. Dalcour lacks standing to assert any Fourth Amendment claims against Ms. Gillespie for placing her foot in the door, insofar as there was an order prohibiting Mr. Dalcour and the minor child MCI from being present in the same residence. (It appears to be undisputed that MCI was residing in Ms. Avril's home at the time of the incident.) Neither party has provided this Court with a suitable evidentiary record to address this issue, but

Under § 1983, compensation for injuries caused by constitutional deprivations are recoverable. *Carey v. Piphus*, 435 U.S. 247, 254-55 (1978). The contours of the injury, and therefore the damages available for a given deprivation, are "shaped by the interests" the constitutional right protects. *Id.* Principles of recovery underlying tort law typically provide the "appropriate starting point" for the inquiry as to what sorts of injuries are compensable under §1983. *Id.* at 257-58. If there is sufficient congruency between the constitutional right and the interests protected by tort law, the court can simply apply the tort damage rule directly; in other circumstances, it may be necessary to "adapt[ ] common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right." *Id.* at 258.

Thus, the Court begins by attempting to find a tort-law analogue to the constitutional deprivation occasioned by Ms. Gillespie placing her foot in the doorway and refusing to remove it upon Ms. Avril's request. The most natural fit is the tort of trespass – that Ms. Gillespie intentionally entered into (however slightly) Ms. Avril's property and remained thereon, without having a legal privilege to do so. Restatement (Second) of Torts, § 158. Notably, the tort of trespass creates liability even where the defendant's trespass causes no particular physical harm to the plaintiff or her property. *Id.*, § 163 & comment d ("The wrong for which a remedy is given under the rule stated in this Section consists of an interference with the possessor's interest in excluding others from the land. Consequently, even a harmless entry or remaining, if

---

the 10th Circuit's opinion reflects that the residence was "the family home" – *i.e.* the primary residence of both Ms. Avril and Mr. Dalcour -- and that Mr. Dalcour "appeared to be living there" at the time of the relevant incident. Under such circumstances, the Court cannot say that Mr. Dalcour was the equivalent of a "trespasser," as the Defendants' cases discuss. Putting aside the legal propriety of his presence, it appears to be undisputed that Mr. Dalcour was, at the very least, a "guest who has a degree of acceptance into the household," granting him standing to pursue a Fourth Amendment claim. *See U.S. v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir. 2003).

intentional, is a trespass"). The tort of trespass closely aligns with the interests protected by the Fourth Amendment's prohibition of unreasonable searches. In *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001), the court explained that "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they include liberty, property and privacy interests – a person's 'sense of security' and individual dignity." Thus, much like the tort of trespass, a Fourth Amendment violation does not turn on the presence or absence of physical injury to the plaintiff; instead, it focuses on the intangible right to be free from intrusions upon property and privacy interests. *See e.g. Walker v. City of Denver*, 720 P.2d 619, 623 (Colo. App. 1986) ("absent the owner's permission, it is a trespass for [police] officers to remain on the premises longer than is necessary" to perform their lawful duties).

The question then becomes what types of injury are compensable under a trespass-type theory. Under Colorado law, damages available on a trespass claim include any property losses (*e.g.* diminution of value, remediation costs, loss of use, etc.), as well as "personal injury to the landowners in the form of discomfort and annoyance" resulting from the trespass. *Board of County Commissioners v. Slovek*, 723 P.2d 1309, 1318 (Colo. 1986), *citing* Restatement (Second) of Torts, § 929(1) (c) ("Discomfort and annoyance to an occupant of the land and to the members of the household are distinct grounds of compensation for which in ordinary cases the person in possession is allowed to recover in addition to the harm to his proprietary interests") (comment c). Colorado courts have also recognized that, in appropriate circumstances, injuries occurring as "the natural and proximate consequences of [a] trespass" are recoverable. *Montgomery Ward & Co., Inc. v. Andrews*, 736 P.2d 40, 45 (Colo. App. 1987). In *Montgomery*

*Ward*, the court affirmed a jury's trespass award in favor of a sales agent, where the principal properly entered into the agent's office to retrieve the principal's property, but thereafter committed trespass by changing the locks, excluding the agent from access for a period of 10 days. *Id.* The jury's award included not only damages for the agent's loss of use of the property, but also damages reflecting "the destruction of [the agent's] business" and termination of a rental contract within a third party resulting from the lockout. *Id.*

With these principles in mind, the Court turns to the specific facts of this case. As it appears to the Court, there are three primary events that occurred, each of which warrants a separate analysis: (i) Ms. Gillespie initially placed her foot in the door and refused to remove it; (ii) Sergeant Griffith's subsequent appearance on the scene, his briefing by Ms. Gillespie about the situation, his decision to direct the forcible entry into the home, and the subsequent entry; and (iii) the physical arrest of the Plaintiffs. There is a triable issue with regard to whether Ms. Gillespie put her foot in the door and whether it is a constitutional violation. If these issues are resolved in favor of the Plaintiffs, the injuries they suffered during the course of the intrusion clearly are compensable, just as they would be under a trespass theory.

The difficulty arises with regard to events that transpired after Ms. Gillespie removed her foot from the door. The Plaintiffs contend that all subsequent events were proximately caused by the unlawful "foot in the door" and therefore a retrial of all claims on that basis is appropriate. Given the determinations already made in this case and application of the analogous tort theory of trespass, the Court concludes otherwise.

### A. Subsequent Arrests of the Plaintiffs

As to the arrests, the Tenth Circuit has determined that they were lawful. Thus, despite any unlawful conduct by Ms. Gillespie by putting her foot in the door, there was no compensable injury simply because the Plaintiffs were arrested.

As to the manner of the arrests, the Plaintiffs have complained that law enforcement officers used excessive force. The excessive force claims were previously submitted to the jury and the jury returned a verdict in favor of the all of the Defendants. The Plaintiffs took no appeal from that verdict or the rulings underlying it, and thus, the conclusion that the Defendants did not use excessive force in effecting the Plaintiffs arrest has become final. The doctrine of *res judicata* prevents the Plaintiffs from contending anew that the force used against them was excessive. *See generally Allen v. McCurry,* 449 U.S. 90, 94 (1980). Thus, in considering whether the Plaintiffs can recover for the use of excessive force during their arrests, the Court is constrained by the conclusion that the Defendants did not use an excessive amount of force in effecting such arrests.

The question, thus refined, is whether the Plaintiffs can recover for the Defendants' use of a reasonable amount of force in effecting a lawful arrest.[3] Courts have long held that a police officer making a valid arrest is privileged to use a reasonable amount of force to do so. *Graham v. Connor,* 490 U.S. 386, 396 (1989). Thus, regardless of the merits of any question of causation (which this Court need not reach), the Court finds that even if Ms. Gillespie violated the Fourth Amendment's prohibition against unreasonable searches by placing her foot in the doorway, the

---

[3] The prior jury also found in favor of the Defendants on the Plaintiffs' unlawful seizure claims, and thus, the legality of the Plaintiffs' arrests are also now *res judicata*.

Plaintiffs cannot recover any for any injury caused by the use of reasonable physical force in effectuating a lawful arrest.

### B. Forcible entry

The remaining question is whether the Plaintiffs can recover for injuries they sustained as a result of the Defendants' forcible entry into the home. In addressing this issue, it is important to recall the factual sequence: Ms. Gillespie knocks, Ms. Avril answers, and after ascertaining that Ms. Gillespie lacks a warrant, attempts to close the door. Ms. Gillespie places her foot in the doorway, preventing the door from closing. Ms. Avril "attempt[ed] to force the door closed, slamming it against [Ms.] Gillespie." 492 Fed.Appx. at 928. In the meantime, Ms. Gillespie "confirmed Mr. Dalcour's presence in the home by speaking to him through the partially closed front door." *Id.* Sergeant Griffith arrives and is briefed by Ms. Gillespie about the situation, including the fact that "[Mr.] Dalcour and the children were in the home." *Id.* Based on the information received from Ms. Gillespie, as well as having observed "the ongoing struggle at the door," Sergeant Griffith directs that the Defendants forcibly enter the home, and they do so. *Id.*

As with the arrest claim, the scope of compensable injuries resulting from the Defendants' forcible entry is circumscribed by determinations made in this matter. The 10th Circuit has affirmed the grant of summary judgment on qualified immunity grounds to Sergeant Griffith regarding the decision to direct the forced entry. Specifically, it found that the information he had "could lead a reasonable officer to believe that the children were in imminent danger and that immediate entry into the home was required." 492 Fed.Appx. 934-35. The 10th Circuit also found that Ms. Gillespie was entitled to summary judgment on qualified immunity grounds to the extent that the Plaintiffs sought to hold her liable for having improperly induced

10

Sergeant Griffith into making the forced entry by falsely representing the circumstances to him. The court found that the Plaintiffs were required to show that Ms. Gillespie "did not miscommunicate with Sergeant Griffith through mere negligence, but rather did so intentionally or recklessly." *Id.* The court concluded that "there is no indication in the record that Agent Gillespie was anything other than confused about the Officers' authority to enter the home," and thus, granted her qualified immunity on this portion of the Plaintiffs' claims. *Id.*

Once it is acknowledged that Ms. Gillespie cannot be liable for using <u>incorrect</u> information to induce Sergeant Griffith into forcibly enter the home, the question that becomes whether Ms. Gillespie can be held liable for inducing Sergeant Griffith's entry by providing him with <u>truthful</u> information – "both Mr. Dalcour and the children are in the home" – that she obtained by virtue of unconstitutionally placing her foot in the doorway.

Essentially, the Plaintiffs invoke the "fruit of the poisonous tree" doctrine: that a police officer is not entitled to make subsequent use of evidence that was obtained through unconstitutional conduct. The "fruit of the poisonous tree" doctrine is an exclusionary rule applicable to criminal proceedings for deterrence purposes, but it is not generally applied in civil proceedings to extend a person's constitutional rights. *Townes v. City of New York*, 176 F.3d 138, 145-46 (2d Cir. 1999); *see also Snider v. Pekny*, 899 F.Supp.2d 798, 816 & n. 5 (N.D.In. 2012) (citing cases). Because the doctrine does not apply, there is no legal reason why Ms. Gillespie could not convey what she had learned (albeit through wrongful conduct) about Mr. Dalcour's presence to Sergeant Griffith, nor why Sergeant Griffith could not act on that information. As noted above, the 10th Circuit has already concluded that Sergeant Griffith's knowledge of the facts was sufficient to give the Defendants cause to forcibly enter the home.

Thus, logically, Ms. Gillespie cannot be held liable in damages for lawfully conveying information to Sergeant Griffith, nor for inducing Sergeant Griffith into taking an action that was itself lawful, simply because Ms. Gillespie obtained that information by virtue of an unconstitutional act.

The Plaintiffs argue that Ms. Gillespie is nevertheless liable for any and all injuries that occurred after her unconstitutional conduct, and that Sergeant Griffith's intercession is not sufficient to break the proximate cause chain between the foot in the doorway and forcible entry into the home, *citing Staub v. Proctor Hospital*, 131 S.Ct. 1186, 1192 (2011). *Staub* is an employment discrimination case. The pertinent facts are that the plaintiff's biased supervisors induced an unbiased superior to terminate the plaintiff's employment. The decision explains that "under tort law . . . the exercise of judgment by [a] decisionmaker does not prevent [an] earlier agent's action (and hence the earlier agent's discriminatory animus) from being the proximate cause of the harm." *Id.* Unfortunately, *Staub* offers no meaningful guidance here. The 10th Circuit has already concluded that the "decisionmaker" – Sergeant Griffith – acted lawfully in deciding to forcibly enter the Plaintiffs' home and that Ms. Gillespie did not intentionally (and thus, actionably) induce that act. (To be factually and legally analogous to this case, *Staub* would have to present circumstances in which the decisionmaker's decision to terminate the employee was lawful, but the employee was nevertheless permitted to seek damages from his biased supervisors.)

Even if the forced entry can be said to have been proximately caused by Ms. Gillespie placing her foot in the doorway, the fact remains that the entry was lawful. The Plaintiffs simply

12

offer no authority for the proposition that a state actor's prior unconstitutional conduct can somehow expose the actor to damages arising from a separate, subsequent, lawful act.

Similarly, the Plaintiffs' reliance on *Train v. City of Albuquerque*, 629 F.Supp.2d 1243, 1252-53 (D.N.M. 2009), is misplaced. In *Train*, the plaintiff was the victim of a warrantless search of his apartment that revealed an unlawful weapon. The plaintiff was indicted on weapons charges, but the court ultimately suppressed the discovery of the weapon, finding that the search of his apartment was invalid. The plaintiff then commenced § 1983 claims against the police involved, sounding in unlawful search and seizure, and the court granted summary judgment to the plaintiff on liability. The issue then arose as to the scope of the trial and compensable injuries. The plaintiff sought an award of damages for his criminal defense fees, compensation for his pre-trial incarceration, and emotional distress; the defendants contended that damages arising from post-indictment processes were not recoverable. In a thoughtful opinion, the trial court concluded that those types of injuries "implicate the interests that the . . . Fourth Amendment protects," and found that they were proximately caused by the unlawful search. *Id.* at 1252-53. But *Train* is readily distinguishable because the search was unlawful. It then gave rise to the criminal prosecution that in turn resulted in the claimed injuries. Thus, *Train* properly found that the plaintiff was entitled to recover for all injuries that proximately flowed from that unlawful search. Here, although Ms. Gillespie's initial "search" – the foot in the doorway – may have been unlawful, the chain of causation is broken by a lawful subsequent search and arrest. The Plaintiffs cannot recover for injuries that arise from lawful conduct simply because it was preceded by unlawful conduct.

Thus, the Court finds that the Plaintiffs' remaining claim against Ms. Gillespie – a claim under § 1983 for violation of their Fourth Amendment rights arising out of her placing her foot in the doorway – may proceed to trial, but the scope of injuries for which the Plaintiffs may seek compensation is limited to the discomfort and annoyance suffered by the Plaintiffs during the warrantless entry – from the time Ms. Gillespie placed her foot in the door and the time that she removed her foot. The Plaintiffs may not recover for injuries sustained as a result of the Defendants' subsequent forced entry, Plaintiffs' arrests, or any other events that occurred once Ms. Gillespie removed her foot from the doorway.

The parties shall begin preparation of a Proposed Pretrial Order addressing the remaining claim, consistent with the instructions in the Trial Preparation Order **(# 50)**, and shall jointly contact chambers to schedule a Pretrial Conference. In light of the proceedings to date, the caption of this action is **AMENDED** to omit reference to all Defendants other than Ms. Gillespie.

Dated this 14th day of June, 2013.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge